[No. 8060.]

DUSSART ET AL. V. M. ABDO MERCANTILE COMPANY

1. TAX TITLES—*Assessment—Description.*  A custom of the county assessor to describe property by an abbreviation, in the assessment roll, will, in considering the validity of a tax sale based upon such an assessment, be disregarded.  Any such custom is vicious and without effect.  (425)

2. ——*Void Deed.*  A tax deed which by its recitations shows that the land was sold to the county on the first day of the sale is void upon its face.  (426)

So a deed not attested by the official seal of the county treasurer where this is required by statute.  (426, 427)

3. LIMITATIONS—*Void Deed—Color of Title.*  To give color of title the instrument relied upon must be good in point of form, must profess to convey title, and must be properly executed.  A treasurer's deed not under his official seal, when this is required by statute, does not amount to color of title.  (428)

4. ——*Good Faith.*  Color of Title is unavailable when acquired with knowledge of its invalidity.  The assessment roll and certificate of sale described the property as situate in a town which had no existence.  One of the purchasers was an attorney.  *Held* impossible to conceive of good faith, in reliance upon a deed, based upon such certificate, and assuming to convey other and different property.  (430)

5. Trial—*Continuance—Surprise.*—Surprise in the testimony produced for defendant, alleged during the trial, as ground of a continuance, presents a question which is for the discretion of the trial court. (426)

*Error to Las Animas District Court.*—Hon. A. Watson McHendrie, Judge.

Messrs. McGlashan & Gow, and Mr. W. G. Hines, for plaintiffs in error.

Messrs. McChesney & McChesney, for defendants in error.

Mr. Justice Scott delivered the opinion of the court:

This is an action to cancel a tax deed and to quiet title in the plaintiffs below, to the premises involved. Louis Dussart died on the 4th day of July, 1896, intestate, and at the time of his death was the owner and in possession of Lot 9, Block 10, in Romeroe's addition to the town of Aguilar in Las Animas county.

He left as his heirs, a wife and six children, all of whom were the plaintiffs below in this case. The defendant claims under a tax deed dated January 29th, 1902, based upon a sale of the premises to the county on the 23d day of March, 1896, for taxes due for the year 1894; recorded February 24th, 1902; and under the seven years' statute of limitation, as being in open, notorious, continuous and actual possession of the lots involved for a period of more than seven years prior to the commencement of this action, under claim and color of title made in good faith, and the payment of all the subsequent taxes legally assessed against said lot.

The cause was tried partially upon an agreed statement of facts, in which it is agreed in addition to what has been said; that three of the plaintiffs were at the time of the execution of the tax deed, minors, and did not attain their majority in time to come within the statute of limitations so pleaded; that in 1894, the property was

assessed at the value of $5.00 and the tax levied was twelve cents; that the certificate based upon which the deed was executed, described the premises as Lot 9, Block 10 of the town or city of Romeroe's; that no valid affidavit of publishing and posting the notice of tax sale was filed with the county clerk and treasurer; that the said tax certificate was assigned by the county treasurer to A. I. Lindsey and Fred Rustedt; and that the tax deed described the property as Lot 9, Block 10 in Romeroe's addition to Aguilar, Las Animas county, Colorado; that the property was afterward by mesne conveyances, conveyed to the defendant in error.

It is further stipulated that the said tax deed is void on its face, in that the property therein purporting to be conveyed was sold to the county of Las Animas on the first day of the treasurer's sale, and that said deed is not attested by the official seal of the county treasurer of Las Animas county; and that all subsequent taxes were paid by the defendant and its grantors when due.

It was admitted during the trial that it was the custom of the county assessor in the year 1894, to assess the property in Romeroe's addition to the town of Aguilar as being a certain lot and block, Romeroe's, and that it was intended thereby to mean Romeroe's addition to Aguilar. But the plaintiff's rights are not controlled by a custom of county officials. They are entitled to their rights under the law.

The court found that the tax deed was void upon its face and that the defendant and its predecessors claiming the title under the tax deed have been in the actual, open and notorious possession of said lot, under claim and color of title, made in good faith, and have paid all taxes legally assessed and levied thereon for a period of seven years immediately preceding the commencement of the action. That the seven year statute of limitation cannot and does not apply to the three plaintiffs, who were minors at the time, and the judgment in so far as these three of the plaintiffs is concerned, cancelled and annulled said tax deed and quieted title in a one-twelfth

interest in said premises in and to each of the three defendant minors, and adjudged the defendant to be the owner in fee simple of the remaining three-fourths interest, and quieted title in the defendant for such interest in the premises. This judgment is before us for review.

While there are many apparent valid objections to the validity of the tax deed, we will consider only the following:

(a) That the deed is not attested by the official seal of the county treasurer of Las Animas county.

(b) That the property was assessed and described in the certificate of tax sale as follows: Lot 9, Block 10, Romeroe's, while in the deed the premises are described as Lot 9 Block 10 in Romeroe's addition to the Town of Aguilar, etc., which latter is the correct description of the premises.

Upon the hearing A. I. Lindsey, one of the grantees, of the deed, testified for the defendant and to the effect that he erected a building on the premises in the year 1903. Counsel for plaintiff contended that this testimony was a surprise and for such reason moved the court for a continuance to permit them to prove that this building was not erected, and that Lindsey did not take possession of the premises until 1905, which, if true, would take the case out of the seven year statute of limitations.

This motion was overruled, and is assigned by the plaintiffs as one of the errors in the case. It would seem to be well within the discretion of the court to overrule that motion, and as presented here we cannot hold it to be error.

The deed upon its face shows that the property was sold to the county on the first day of the treasurer's sale. Under the repeated decisions of this court as well as by the admission of parties, this deed was clearly void upon its face for such reason alone.

It is also agreed that the deed is void upon its face for the additional reason that it is not attested by the county treasurer's official seal. The deed in question was issued under a statute, sec. 184, Laws of 1901, requiring

its execution by the treasurer in his official capacity, and attestation by his official seal and not "official or private," as required under the former statute.

In *Empire Co. v. Bender,* 49 Colo. 522, 113 Pac. 494, it was said: "Under the statute in force at the time of the execution of such an instrument, it was a prerequisite that the deed should be signed by the treasurer in his official capacity, and attested by his official or private seal, and acknowledged, before some officer authorized to take acknowledgments of deeds, and when substantially thus executed and recorded in the proper records of title to real estate, it vested all the right, title, interest and estate of the former owner in and to the lands conveyed. Until the deed was thus executed, namely: signed by the treasurer in his official capacity, attested by his private or official seal, and acknowledged, it was no deed. Mills' Ann. Stats, secs. 3901 and 3902." In that case, *Sayer v. Sage,* 47 Colo. 559, 108 Pac. 160, was quoted with approval wherein it was said:

"The treasurer, in executing such deed, acts under a naked statutory power, and in order that it shall be valid, it must comply substantially with the provisions of the statute prescribing its form. That it must be attested by the official or private seal of the treasurer is a positive requirement of the statute, and is as necessary to its validity as any other. Without one of the other of the seals specified, it is void."

The law of 1901 required attestation by the official seal alone, and in the absence of this or of any seal at all, the deed in controversy was void upon its face for that reason alone.

It will be seen that the tax deed relied on in this case under authority of *Empire Co. v. Bender, supra,* by reason of the absence of the seal of the county treasurer, *was no deed at all.* It does not come within the rule of *De Foresta v. Gast,* 20 Colo. 307, 38 Pac. 244, and authorities cited as resting on that case. It is not regularly executed as provided by the statute. The last case cited, as does *Sayre v. Sage, supra,* holds that the attachment

of the seal is vital to the validity of a tax deed for the reason that it is vital to the manner and form of the execution of the instrument. If therefore it is no deed at all, it follows that such an instrument cannot give color of title.

In an exhaustive review of the authorities it was held in the case of *Matthews v. Blake,* 16 Wyo. 116, 92 Pac. 242, quoting Black on Tax Titles:

"Where the statute directs the execution of a deed by a public officer, and requires it to be executed in a particular manner and to be witnessed or acknowledged before a particular officer, the witnessing or acknowledging of the deed in that manner is a part of its execution, and without such witnessing or acknowledgment is void upon its face. The rule is stated in *Black on Tax Titles,* § 208, as follows: 'A rule of primary importance is that the execution of a tax deed must conform strictly to the statute; that is, any directions which the law may give in regard to its signature, seal, witnesses, or acknowledgment, must be duly complied with, or the conveyance will be invalidated. Thus, if the act requires that tax deeds shall be authenticated by the addition of the seal of the county, and this be omitted, the deed will be void; nor will it even be admissible to show color of title under the special limitation of the revenue act.' "

It may be stated as a general and well established rule of law, that in order to give color of title, the instrument of conveyance must at least be good in point of form, profess to convey the title, and be properly and duly executed.

Under a statute requiring the seal of the county to be attached, as in this state, it was expressly held in *Sutton v. Stone,* 4 Neb. 319, that if the seal of the county be omitted in its authentication, the deed is not only void, but that it is not admissable even to show color of title. In *Redfield v. Parks,* 132 U. S. 239, 33 L. Ed. 327, 10 Sup. Ct. 83, a case where a tax deed recited the sale of being on a day not authorized by law, the deed was held not admissible in evidence to support adverse possession under a statute of limitations. *Armstrong v. Hufty,* 156 Ind. 606,

55 N. E. 443, 60 N. E. 1080. In *Day v. Day,* 59 Miss. 318, the sole question was the omission of the seal of the county treasurer, and it was there held that the instrument was not a deed, and therefore not admissible in evidence for any purpose.

The reason for the rule is well stated in *Keller v. Hawk,* 19 Okla. 407, 91 Pac. 778, as follows:

"We believe that the legislature did not intend that time should breathe life and force into an instrument from the face of which it could be seen that it was absolutely void. The law was intended to protect purchasers at tax sales and their grantees from hidden defects in the proceedings, and not from those which the tax deed shows upon its face, and which under the law, persons dealing with the title are bound to know."

We must hold therefore, that the deed in this case by reason of the absence of the seal of the county treasurer was not *prima facie* evidence of title, and in the language of *Empire Co. v. Bender, supra,* it was no deed.

The clearest definition of the term "claim and color of title in good faith," we have been able to find, is that given in *Irving v. Brownell,* 11 Ill. 403, where it is said:

"By the words 'claim and color of title made in good faith,' must, therefore, be understood such a title as, tested by itself, would appear to be good—not a paramount title, capable of resisting all others, but such an one as would authorize the recovery of the land when unattacked, as no better title was shown; that is, a *prima facie* title. Such a title, connected with seven years actual possession and payment of taxes, becomes invincible. The auditor's deed offered in evidence in this case, as has already been shown, was not such a title, as, unaccompanied with other proof, it did not afford *prima facie* evidence of title, and it was not, therefore, admissible in evidence, for the purpose of showing claim and color of title under the act of 1839."

But this claim under "color of title," must be made in good faith, and is not available where the title is accepted with knowledge of its invalidity.

In *Irving v. Brownell, supra,* speaking upon this point the court said:

"We are bound to give these words some meaning, and they will have none if the same construction is to be put upon the act as if they were not in it. It is manifest that the legislature only intended to protect those who had been in possession of land and paying taxes upon it under the belief that they had a good title * * * If he knew that he was not acquiring such a title, or if the circumstances should be such that a reasonable man might know that the title he was obtaining was wholly defective, then it would not be a title acquired in good faith, and consequently, not entitled to the protection of the act of 1839."

The certificate of sale to the county purchased by Lindsey and Rustedt, and upon which the deed was issued, described the premises therein alleged to be sold, as Lot 9, Block 10, town or city of Romeroe's. The property was so assessed and described upon the tax roll. This appeared on the face of the certificate. It is not claimed that there is any such city or town in Las Animas county as Romeroe's. The deed described the premises as being in Romeroe's addition to the town of Aguilar. The description upon the tax rolls and in the certificate of sale may have applied equally as well to the town of Trinidad as Aguilar. The description in the certificate and upon the rolls was of no existing premises at all. This was apparent on the face of the certificate and the purchasers were in this case presumed to know the law, and the fact that there was no such town or city as Romeroe's must have been apparent. Beside, it appears that one of the purchasers was a lawyer. Reliance in good faith upon the purchase of such a certificate as entitling the purchasers to a deed for premises not therein described is inconceivable.

One who takes a conveyance of a tax title can claim no benefit from it if he had actual knowledge of facts which render it invalid or if the records show on their face fatal defects or irregularities. 37 Cyc. 1485, Am. & Eng. Enc. Vol. 1, 868, and authorities cited. In *Bowmand*

*v. Wetting,* 39 Ill. 416, the holder of a certificate of tax sale obtained a tax deed prior to the expiration of the two years required by the statute and the court said:

"The question is, can a party holding such certificate, when he accepts a deed to which he knows he is not entitled under the law, be considered as acquiring the color of title which such deed, if he was entitled to it, would give him, in good faith? We have no hesitancy in answering this question in the negative. The deed was made and accepted in fraud of the law. The appellant knew, when he accepted this deed, that he was not entitled to it, and therefore, cannot use it as color of title made in good faith."

In *Silford v. Stratton,* 54 Colo. 248, 130 Pac. 327, this court quoted with approval the following language from *Hardin v. Governour,* 69 Ill. 140:

"But color and claim may be made in good faith or in bad faith. The good or bad faith is not a result of color of claim. The faith, whether good or bad, depends upon the purpose with which the deed is obtained, and the reliance placed upon the claim and the color. A party receiving color of title, knowing it to be worthless, or in fraud of the owner's rights, although he holds the color and asserts the claim, cannot render it availing, because of the want of good faith."

The facts in this case force the conclusion that there was an absence of that good faith required by the statute.

The judgment is reversed.

Musser, C. J., and Garrigues, J., concur.